IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA GRANDY,<br>        Plaintiff,<br><br>v.<br><br>KFC OF AMERICA, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>) Civil Action No.: 04-12319-NMG<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION FOR DISMISSAL, AND/OR FOR
MONETARY SANCTIONS AND OTHER APPROPRIATE RELIEF,
PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 37 AS A
RESULT OF PLAINTIFF'S DISCOVERY ABUSES, AND DEFENDANT'S
MEMORANDUM IN SUPPORT OF ITS MOTION**

Defendant KFC of America, Inc., pursuant to Federal Rule of Civil Procedure 37, hereby moves for dismissal of this action and/or for monetary sanctions and other appropriate relief as a result of plaintiff's discovery abuses, which include egregiously false interrogatory answers, and files its Memorandum in Support of its Motion. In addition to this Motion and Memorandum in Support, defendant also relies on the Affidavit of Lawrence R. Holland, Esq. filed herewith. The grounds for Defendant's Motion are as follows:

I.    STATEMENT OF THE CASE

Plaintiff filed this action on October 15, 2004 in Superior Court for the Commonwealth of Massachusetts. By a Notice of Removal dated October 28, 2004, defendant removed this action to this Court pursuant to 28 U.S.C. Section 1441(a).

Plaintiff alleges that on October 31, 2001 she slipped and fell at the KFC restaurant located at 875 North Montello Street, Brockton, Massachusetts (hereinafter "the KFC Restaurant"). Plaintiff's two page Complaint contains one cause of action against defendant for negligence/breach of warranty.

The circumstances of plaintiff's alleged fall at the KFC Restaurant are very suspicious. Ron Palmer, who was the General Manager of the KFC restaurant at the time of the alleged fall, will testify that plaintiff and a man whom she identified as her boyfriend came into the KFC Restaurant on the day of the incident and requested free food. [See Affidavit of Lawrence R. Holland, Esq. ("Holland Aff."), ¶ 2, Exh. A]. Specifically, they requested a replacement meal that they claimed another manager had promised them. [See id.]. Mr. Palmer told them that they would have to come back and speak with the manager who had agreed to provide them with a replacement meal, and the next thing that he new, plaintiff was lying in the bathroom hallway claiming that she had slipped and fallen. [See id.]. After her boyfriend assisted plaintiff to the car, he came back into the KFC Restaurant, again requested free food from Mr. Palmer, and stated that they were not trying to "scam" Mr. Palmer, however obvious that may have appeared. [See id.].

In about June, 2005, defendant served interrogatories and a document request on plaintiff. In about August, 2005, plaintiff served responses to defendant's interrogatories. [See Holland Aff., ¶ 3, Exh. B]. Interrogatory No. 3 of defendant's interrogatories to plaintiff requested plaintiff to identify the injuries that resulted from the alleged fall at the KFC Restaurant. Plaintiff's response to this interrogatory stated that the fall caused injuries to her "head, neck, back, arm and leg"; that she suffered permanent nerve damage in her neck know as "cervical rediculopathy" and compression of the spinal cord; that she has numbness in both hands; and that she has permanent nerve damage known as neuropathy in her left leg as a result of which she walks with a cane. [See Holland Aff., ¶ 3, Exh. B at pp. 2-3].

Interrogatory No. 5 of defendant's interrogatories to plaintiff requested plaintiff to describe all medical conditions in the last ten years which preexisted any of the injuries claimed by plaintiff in this action and to identify all health care providers who treated her for any such pre-existing injuries. [See Holland Aff., ¶ 3, Exh. B at pp. 4]. In response, plaintiff stated that within the 10 year period prior to the alleged fall at the KFC Restaurant, she had seen her primary care physician "regarding the occasional flu or cold and for routine check- ups"; that she had seen her psychiatrist for anxiety and depression; and that she was treated for a hysterectomy. [See Holland Aff., ¶ 3, Exh. B at p. 4].

Interrogatory No. 6 of defendant's interrogatories to plaintiff requested plaintiff to identify all health care providers that plaintiff treated with during the ten year period prior to the alleged fall at the KFC Restaurant. In response, plaintiff identified only her former primary care physician, Dr. Ronald Lambruno,[1] her current primary care physician, Dr. Nicholas Michalakos, and the doctor who treated her for her hysterectomy, Dr. David Edinburgh. [See Holland Aff., ¶ 3, Exh. B at pp. 6].

In response to defendant's request for production of documents, plaintiff produced records from the Caritas Good Samaritan Medical Center ("Caritas") concerning her emergency room treatment at Caritas on the day of the alleged fall at the KFC Restaurant. Nowhere in her interrogatory answers did plaintiff state that she had treated at Caritas prior to the alleged fall at the KFC Restaurant or that she had any prior injuries to the body parts she claimed were injured as a result of the alleged fall. Nonetheless, as it often does in personal injury cases, out an abundance of caution, defendant decided to

---

[1] Plaintiff provided an old address for Dr. Lambruno, and defendant has not been able to locate him.

3

request further records from Caritas to make sure that there were no prior injuries that plaintiff had failed to disclose.

Caritas produced a stack of records approximately five inches thick in response to defendant's request. These records concerned <u>sixty</u> visits by plaintiff to the Caritas Emergency Room for treatment between 1984 and 2001, and these visits were for alleged injuries far more serious than the "occasional flu or cold". Of particular import are the Caritas records which reveal that on October 28, 2001, <u>a mere three days prior to the alleged fall at the KFC Restaurant</u>, plaintiff visited the Caritas Emergency Room complaining of pain in her neck, back and chest as a result of having been thrown to the ground, kicked and punched in the face by her boyfriend's sister. [<u>See</u> Holland Aff., ¶ 4, Exh. C].

The Caritas records further reflect that plaintiff returned to the Emergency Room on October 29, 2001, a mere two days prior to the alleged fall at the KFC Restaurant, to receive treatment for the injuries that resulted from the assault by her boyfriend's sister. On that date, plaintiff again complained of neck and back pain. [<u>See</u> Holland Aff., ¶ 5, Exh. D]. She stated that she had been knocked to the ground and kicked and punched in multiple places. The records also note that there were bruises on various parts of her body. [<u>See</u> Holland Aff., ¶ 5, Exh. D].

Moreover, the Caritas records reveal that plaintiff had been treated multiple times for prior, traumatic injuries to the body parts she claims were injured as a result of the fall at the KFC Restaurant, including her head, neck, and legs. These records include the following:

1. 10/25/01 -- Abdominal pain. Patient ("Pt") complained of right lower quadrant pain that radiates to her back. Past surgeries list hysterectomy, cyst removal and L knee surgery.

2. 4/2/01 – Pt complains of left lower quadrant pain and bilateral leg pain.

3. 3/15/00 – Pt states injured knee. L knee pain post motor vehicle accident 1 wk ago. Slammed knee into dashboard. She was a front seat passenger in a parked car that was hit on L front at low speed. She was discharged with knee immobilizer. X-ray left knee: no effusion noted no definite fracture or dislocation noted.

4. 1/24/00 -- Pt states assaulted by former landlord. Pt states thrown to ground and kicked in chest and back also dragged down stairs striking head on stairs. States she was "dazed" and complained of neck pain. Pt has multiple contusions legs and arms. Pt complains of neck, back, chest, arm and leg pain. Multiple abrasions to neck, back, arm, abdomen, head, both legs.

5. 12/23/99 -- Pt complains of abdominal pain that radiates to her back. Note states "Pt returned from CT scan. . . . Pt exits by cane."

6. 11/21/99 -- Pt for evaluation of pain L ankle status post falling down stairs.

7. 11/20/99 -- Pt states fell at home – injured R inside ankle. Pt states twisted ankle on steps complains of R ankle pain with tingling into foot. Discharged with air splint and crutches.

8. 10/10/99 -- Pt states neck pain radiates to head. Complains of cough, headache and neck pain x 3 days. X-ray of C-spine ordered. Acute cervical strain/syndrome.

9. 10/14/99 – Pt complains of headaches and feeling numb all over.

10. 8/27/99 -- Pt states numbness and tingling in extremities. Trembling and twitching of both lower legs. Unexplained bruising for 2 weeks.

11. 9/8/98 -- Pt came to triage via crutches with c/o shortness of breath.

12. 8/15/98 -- Pt states injury ankle, shoulder & neck. Pt fell yesterday on a flight of stairs spraining neck. Diagnosis: partial tear L Achilles tendon, acute cervical sprain. X-ray cervical spine C1-C7 no evidence of fracture or dislocation. The odontoid definitely demonstrates a midline dens. There is a reversal of the normal cervical lordosis, most likely secondary to spasm.

13. 5/8/97 -- Notes indicate past surgical history: significant for knee surgery: L knee arthroscope. Nursing Assessment notes state "Physical limitations: cervical neck post a fall in October".

14. 10/28/96 -- Ambulance/fall in Bradlees. Head injury, neck pain. States slipped on something at Bradlees fell backward striking head on floor; complains of neck pain with tingling feet/fingers. Ambulance report states knee injury, clinical impression head and back pain. Pt found alert and oriented on back complained of head and back pain. States she slipped on a coat hanger and landed on back. Pt also complains of numbness to extremities. X-ray of cervical spine: 4 mm rounded calcification projects anterior to the C3 vertebral body. There is loss of normal lordosis.

15. 10/8/94 -- PT states migraine syncope abdominal pain. To ER via stretcher with complaints of sycopal episode, lower left quadrant pain, …. complains of falling yesterday onto knees, complains of neck pain. Yesterday w/ chills, felt lightheaded and fainted in casino. Scraped knees and had brief neck pain without parasthesias and weakness mid posterior neck.

16. 9/17/04 – Pt complains of left lower quadrant pain radiating into left leg.

17. 9/1/94 -- Pt states assaulted – facial injury. Head trauma observation. C-collar as directed. Pt awaiting arrival of Domestic Violence Advocate. C/o nose pain due to struck by husband with phone (per patient) Pt states she was arguing with husband about money and was struck by the phone. Neck stiff sore. Diagnosis: domestic abuse, nasal, acute cervical strain.

18. 3/9/94 -- Pt complains of chronic neck and shoulder pain.

19. 2/8/94 --Pt states syncopal episode 6th time in 10 days. Repeated episodes of fainting spells. Found on floor by daughter. … complains of neck pain. X-ray of cervical spine: No fracture identified. Slight reversal of cervical curve possibly due to muscle spasm.

20. 1/26/94 -- Pt states numbness in arms, nausea. Complained of fingers and mouth tingling.

21. 1/22/94 -- Pt states she has history of anxiety attacks and mitral valve prolapse. Felt ok today but husband found her on the floor – shook her to wake her up. Complains of tingling of arms, hands & legs upon waking.

22. 4/29/94 -- Pre admission for rt adnexal mass. Previous surgery: knee arthroscopy and under "physical limitations" neck and shoulder pain.

23. 12/31/90 -- Pt was involved in MVA last night. Pt was unbelted driver struck at high speed in R front fender. Now complains of R neck pain and R knee and

    thigh pain and R UQ pain.  Struck RUQ on steering wheel.  <u>Diagnosis</u>: <u>cervical strain</u>.

24. 8/4/86 – <u>Pt. states she fell while out at restaurant</u> landing on right side. <u>Complains of pain right side of neck</u>, right elbow and right hip.

25. 2/6/85 -- Pt slipped under the rear wheel of a Jeep and the wheel rolled over a flexed outwardly turned L knee.  X-ray: no fracture, dislocation or other bony abnormality is seen.  Knee brace.

[<u>See</u> Holland Aff., ¶ 6, Exh. E (emphasis added)].

Furthermore, Interrogatory No. 9 of defendant's interrogatories to plaintiff requested plaintiff to identify any claims that she made as a result of personal injuries in the past fifteen years, and Interrogatory No. 16 asked plaintiff to identify all civil, criminal, and administrative actions to which she had been a party in the past fifteen years.  In response to these interrogatories, plaintiff stated only that she had filed a claim against Plymouth Trolley Company 14 years ago as a result of fall on a trolley that prematurely caused her to go into labor while she was pregnant.[2] [<u>See</u> Holland Aff., ¶ 3, Exh. B at pp. 6, 9].

Here again, defendant did not trust plaintiff's discovery responses, so it did a background check on plaintiff.  The background check revealed that plaintiff, who claims she is unemployed and is receiving disability payments as a result of anxiety, does in fact have a career as a personal injury claimant.  Specifically, the background check indicated that in 1999, plaintiff had filed a civil action against Brockton Security Self-Storage, Inc. in Brockton Superior Court ("the Brockton Superior Court Action").  Defendant obtained records from Brockton Superior Court concerning this prior action, and they reflect that

---

    [2] It is altogether unsurprising that plaintiff failed to provide enough information concerning this prior action to enable plaintiff to locate records concerning it. [<u>See</u> Holland Aff., ¶ 3, Exh. B at p. 6].

plaintiff alleged she had fallen and injured herself while on the defendant's property, and that plaintiff further alleged that she had sustained "serious injuries to her left elbow, shoulder and <u>neck</u>" as a result of which she was unable to walk. [<u>See</u> Holland Aff., ¶ 7, Exh. F (emphasis added)].

After obtaining the records concerning the prior Brockton Superior Court Action, defendant's attorney did some further investigating and learned that plaintiff had also filed a civil action against Bradlees department store as a result of an alleged slip and fall in 1996.[3],[4] The Bradlees slip and fall lawsuit was not listed in the background check results, and defendant's attorney only learned of it by contacting the attorney who had represented the defendant in the Brockton Superior Court Action. [<u>See</u> Holland Aff., ¶ 9].

In the course of his investigation, defendant's attorney also learned that in about 1990, plaintiff filed a civil action concerning a motor vehicle accident that she was in. [<u>See</u> Holland Aff., ¶ 9]. Defendant had also previously obtained records concerning a 2000 motor vehicle accident that plaintiff was in, with respect to which she submitted a

---

[3] The above referenced medical records reflect that plaintiff also claimed to have slipped and fallen at a restaurant in 1986. [<u>See</u> <u>supra</u>, p. 6]. As such, it is apparent that plaintiff makes a living on slip and fall claims. Including the alleged fall at the KFC Restaurant, the records independently obtained by defendant to date reflect at least five slip and falls allegedly suffered by defendant as a business invitee (i.e., 1986 fall at unidentified restaurant; fall in about 1991 while on trolley; 1996 fall at Bradlees; 1999 fall at Brockton Security Self-Storage; and 2001 fall at the KFC Restaurant). At the same time, however, this may be only the tip of the iceberg as the background check revealed that plaintiff resided in Florida for a period of time, and defendant has not yet even begun investigating in that state.

[4] Apparently, water and coat hangers cause plaintiff to fall in the exact same fashion. The medical records concerning the fall at Bradlees reflect that plaintiff claimed to have slipped on a coat hanger and fallen backwards striking her head on the floor. [<u>See</u> <u>supra</u>, pp. 4-5]. In this action, plaintiff claims that she slipped on water at the KFC Restaurant, and that she fell backwards and struck the back of her head on the floor. [<u>See</u> Holland Aff., ¶ 8, Exh. G].

8

claim to an insurance company.[5] [See Holland Aff., ¶ 10, Exh. H]. None of these prior civil actions and personal injury claims were disclosed by plaintiff in her interrogatory answers.

Because defendant's attorneys were forced to spend substantial time conducting the foregoing investigations into plaintiff's preexisting injuries and lawsuits as a result of plaintiff's false interrogatory answers, discovery could not be completed within the timeframe set forth in the Scheduling Order issued by the Court. As a result, in about November 2005, the parties filed a joint motion to extend the expert disclosure deadline to January 15, 2006 and the discovery deadline to February 15, 2005, which the Court granted.

With the expert disclosure deadline of January 15, 2006 looming, defendant's attorney scheduled plaintiff for an Independent Medical Examination ("IME") on January 12, 2005 at the office of Dr. Edward Feldmann in Providence, Rhode Island. Plaintiff's attorney confirmed that plaintiff would appear for the IME. [See Holland Aff., ¶ 11, Exh. I]. Plaintiff failed to appear for the IME.[6] [See Holland Aff., ¶ 11].

---

[5] Records obtained by defendant's attorneys concerning this accident reflect that plaintiff was seated in a parked car in a parking lot when another car backed into the car that she was in. The records further reflect that the damage to the car plaintiff was in was very minor. Plaintiff filed a complaint with Arbella Mutual Insurance ("Arbella") claiming that she had injured her knee. About a week after the "accident", plaintiff claimed that she developed low back pain and neck pain as well. Arbella had an IME performed by Dr. Giles Cowan Floyd, a member of the American Board of Orthopedic Surgery, on May 8, 2000. During his examination of plaintiff, Dr. Floyd found "elements of [an] attempt at symptom magnification and embellishment" and could find no objective support for plaintiff's claims of back and neck pain. [See Holland Aff., ¶ 10, Exh. H].

[6] As a result of plaintiff's failure to appear for her IME, and the ever expanding web of undisclosed, relevant information concerning plaintiff's background that defendant continues to uncover during its investigation into the alleged fall at the KFC Restaurant, if this action is not dismissed, defendant's expert disclosure deadline and the discovery period will have to be extended. The current discovery deadline is February 15, 2006. Defendant has not yet been able

Finally, the deadline for plaintiff's expert disclosures has passed. Plaintiff's putative disclosures are woefully inadequate and do not even scratch the surface of complying with the requirements of Fed. R. Civ. P. 26(a)(2). The disclosure consists only of a one page letter from plaintiff's counsel. [See Holland Aff., ¶ 12, Exh. J].

II.   ARGUMENT

There can be no question that this Court has authority under Federal Rule Civil Procedure 37 to impose the sanction of dismissal for substantial discovery abuses, including false interrogatory answers, and this case cries out for a sanction of this magnitude. See Hull v. Municipality of San Juan, 356 F.3d 98, 102 (1st Cir. 2004); see also Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 588, 593 (9th Cir. 1983) (upholding trial court's dismissal of the plaintiff's claims as a result of the plaintiff's false interrogatory answers and deposition testimony). In Hull, the plaintiff brought a personal injury claim based upon a fall on an allegedly defective city sidewalk in November, 1999. Hull, 356 F.3d at 99. Among other injuries, the plaintiff alleged that subsequent spinal cord surgeries and carpal tunnel surgeries were necessitated by the alleged fall. Hull, 356 F.3d at 99-100. In response to discovery requests seeking the information, the plaintiff failed to disclose a prior motor vehicle accident in 1982 as a result of which he suffered back injuries, a neck injury in 1995, and a 1996 slip and fall which resulted in a diagnosis of carpel tunnel syndrome. Hull, 356 F.3d at 100.

The Hull court found that the plaintiff's false discovery responses were "substantial, deliberate and went to the heart of the case." Hull, 356 F.3d at 102-03. The court further found that the scope of the injuries attributable to the plaintiff's alleged fall

---

to depose plaintiff, and is not in a position to make its expert disclosures as a result of plaintiff's failure to appear for the IME.

was likely to be the main issue in the case, and that harsh sanctions are particularly warranted with respect to the failure to disclose prior injuries since information concerning a plaintiff's prior medical treatment is "peculiarly within the privileged control of the plaintiff."[7] Hull, 356 F.3d at 101. Finally, the court noted that the sanction imposed must be severe enough to deter similar misconduct by other plaintiffs since not all plaintiffs who engage in such fraud will be caught. Hull, 356 F.3d at 102; see also Wyle, 709 F.2d at 589 ("When choosing among possible sanctions, the district court may consider the deterrent value of an order of dismissal on future litigants as well as on the parties").

Based upon the Hull court's holding, dismissal of this action is mandated. Plaintiff's misdeeds are far more severe than the plaintiff's in Hull. In Hull, the plaintiff failed to disclose three prior injuries. In this action, in response to interrogatories squarely seeking the information, plaintiff failed to disclose at least twenty-five prior injuries to the same body parts that she claims were injured in the fall at the KFC Restaurant, at least three prior civil actions that she filed for personal injury claims (including two for slip and falls as a business invitee), and an insurance claim that she made as a result of an alleged motor vehicle accident. [See supra, pp. 3-8]. Moreover, notwithstanding that she had visited the emergency room no fewer than sixty times

---

[7] The importance of truthful and complete interrogatory answers in personal injury cases is further underscored by the fact that defendant's background check did not turn up the prior slip and fall lawsuit that plaintiff had filed against Bradlees. Fortuitously, the records concerning the Brockton Superior Court Action contained the telephone number of the defendant's attorney in that action, the telephone number was still correct even though several years had passed, the defendant's attorney in the Brockton Superior Court Action returned the call of defendant's attorney, the defendant's attorney in the Brockton Superior Court Action had access to her records concerning that action, and her records included information establishing that defendant had admitted to the filing of the Bradlees lawsuit during her deposition. Were it not for this confluence of events, defendant's attorney would have never learned of the lawsuit against Bradlees that plaintiff had filed. [See Holland Aff., ¶ 9].

between 1984 and the date of the alleged fall at the KFC Restaurant, in response to defendant's interrogatories requesting plaintiff to identify all prior injuries for which she had received medical treatment in the ten years prior to the alleged fall at the KFC Restaurant, plaintiff claimed to have only been treated for the "occasional flu or cold" by her primary care physicians, to have been treated for depression by her psychiatrist and to have had a hysterectomy. [See supra, pp. 2-3].

Most notably, the prior injuries plaintiff failed to disclose include severe injuries to her head and neck resulting from numerous traumatic events such as being dragged down stairs, falls and assaults, including one such event that occurred a mere three days prior to the alleged fall at the KFC Restaurant. [See supra, pp. 4-6]. Nonetheless, in this action, plaintiff purports to claim severe head, neck and spine injuries, and that these injuries are solely attributable to the fall at the KFC Restaurant. Moreover, plaintiff also failed to disclose prior instances of tingling and numbness in various parts of her body including her extremities notwithstanding that in this action she claims neurological damage, including such damage to her legs and hands. [See id.].

It is quite clear that plaintiff's discovery abuses were knowing and intentional and that they evidence a broader pattern of deceit as the Court found in Hull. 356 F.3d at 101. In her interrogatory answers, plaintiff stated that she had filed a lawsuit concerning a fall on a trolley some fourteen years ago that caused complications with her pregnancy, a type of injury that is not claimed in this action. At the same time, however, plaintiff failed to mention in her interrogatory answers a visit to the emergency room in October 2001, three days prior to the alleged fall at the KFC Restaurant, during which she claimed neck pain as a result of being repeatedly punched and kicked by her boyfriend's sister.

She also failed to mention the 1999 Brockton Superior Court Action and the 1996 lawsuit against Bradlees. These lawsuits involved claims of injuries similar to the ones claimed in this action, and, in fact, the Bradlees lawsuit involved an alleged slip and fall of the exact same nature as is alleged in this action; i.e., a backwards fall resulting in the striking of plaintiff's head on the floor. Apparently, plaintiff has much greater memory capacity for matters that are irrelevant to this lawsuit than matters which go to the heart of this lawsuit. This is surely no coincidence. See Hull, 356 F.3d at 101-02 (stating that the plaintiff's omissions were "too patent and too convenient" to be attributable to forgetfulness).

Nor would lesser sanctions of a monetary fine or barring plaintiff from bringing certain of her claims suffice. The information uncovered by defendant concerning plaintiff's prior injuries and claims evidences that plaintiff is a career slip and faller. If plaintiff had visited an emergency room other than the one at Caritas after the alleged fall at the KFC Restaurant, or if defendant's counsel had not decided to be thorough and obtain all past medical records, plaintiff might have been able to successfully conceal her elaborate prior medical history. In all likelihood plaintiff has probably successfully perpetrated similar misconduct in connection with her prior, personal injury lawsuits. Accordingly, it is time to bring plaintiff's slip and fall career to the ignominious end it deserves, and the only way to do so is to dismiss this action based upon plaintiff's egregious fraud.[8]

---

[8] Plaintiff is apparently undaunted by the potential ramifications of her misconduct. Defendant's attorney reveled the above stated false representations to plaintiff's attorney prior to filing this Motion, and stated that defendant would refrain from filling this Motion if plaintiff agreed to voluntarily dismissal this action with prejudice. On the one hand, this caused plaintiff's attorney to quite appropriately seek leave to withdraw from this action citing ethical

Finally, the sanction imposed must be sufficient not only to punish plaintiff for her misconduct, but to deter future plaintiffs from similar misconduct. Hull, 356 F.3d at 102. Because plaintiff's failures of disclosure include severe, prior injuries to each and every body part which she claims was injured in connection with the fall at the KFC Restaurant, it would do little good to bar only certain of plaintiff's claims of injury. See Hull, 356 F.3d at 102 (stating that the failure to impose this lesser remedy was not error because dismissing only the claims of injury that were affected by the plaintiff's false discovery response would have "wiped out most of the main damages claims anyway"). Plaintiff clearly envisioned this action as the mother load of all her frivolous, personal injury lawsuits. Indeed, plaintiff is claiming permanent nerve and spine damage. Simply reducing her damages would merely send a signal to all potential fraudulent plaintiffs that they should grossly overstate their injuries and damages from the outset because if false discovery responses are exposed, the court will only reduce their damages claims, which were fraudulent to begin with. This surely will not suffice.[9]

### III.  CONCLUSION

For the above stated reasons, defendant respectfully requests that this Court grant Defendant's Motion for Dismissal And/Or For Monetary Sanctions and Other Appropriate Relief Pursuant to Federal Rule of Civil Procedure 37 as a Result of Plaintiff's Discovery Abuses.

---

considerations. On the other hand, far from agreeing to dismiss, plaintiff is apparently seeking new counsel to represent her.

[9] In the event that the Court decides to impose lesser sanctions, substantial monetary sanctions against plaintiff are warranted. [See Affidavit of Lawrence R. Holland, ¶ 13, Exh. K].

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I, Lawrence R. Holland, Esq., hereby certify that prior to filing this Motion, I spoke with plaintiff's counsel, Douglas Radigan, by telephone on January 31, 2006 at approximately 12:30 p.m. in a good faith effort to resolve or narrow the issues raised by this Motion. We were unable to reach any agreement in this regard.

                                              Respectfully submitted,
                                              KFC of America, Inc.,
                                              By its Attorneys,

                                              _____
                                              Lawrence R. Holland, Esq.
                                              BBO# 554839
                                              Legal Management Services LLC
                                              55 Hammarlund Way
                                              Middletown, RI 02842
                                              (401) 843-8400

Dated: January 31, 2006

## CERTIFICATE OF SERVICE

I, Lawrence R. Holland, Esq., certify that I understand that counsel of record will receive electronic notice of the electronic service of this pleading and will receive service in that fashion.

                                              _____
                                              Lawrence R. Holland